United States District Court
Southern District of Texas
**ENTERED**
August 25, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOUGLAS LANGSTON, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. H-15-0882 |
| PREMIER DIRECTIONAL DRILLING, L.P. and E-EMPLOYERS SOLUTIONS, INC., | § § § § | |
| Defendants. | § § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Douglas Langston ("Langston") brings this action against Premier Directional Drilling, L.P. ("Premier") and eEmployers Solutions, Inc. ("eEmployers") (together, "Defendants") under the Fair Labor Standards Act ("FLSA").[1] Pending before the court is Premier Directional Drilling, L.P.'s Motion for Clause Construction and to Compel Bilateral Arbitration Consistent With Plaintiff's Arbitration Agreement ("Motion for Clause Construction") (Docket Entry No. 35). For the reasons stated below, the court will deny the Motion for Clause Construction.

---

[1]See Collective Action Complaint ("Complaint"), Docket Entry No. 1.

## I.   <u>Background</u>

Langston alleges that he was jointly employed by Premier and eEmployers.[2]  eEmployers provided staffing, human resources, risk management, employee benefits, payroll processing, timekeeping, and instruction on pay practices to Premier.[3]  Langston worked as a "measurement while drilling" ("MWD") employee.[4]  He alleges that he and other MWD employees were paid a base salary and a day rate instead of being paid hourly and were not paid overtime compensation regardless of how many hours over forty they worked per week.[5]

Langston executed an employment agreement via eEmployer's online portal that contained the following arbitration provision (the "Employment Agreement"):

> Disputes - Any controversy arising between any parties to this agreement, eESI, CLIENT, EMPLOYEE (or their agent, officer, director or affiliate), including but not limited to common law, statutory, tort or contract claims will be submitted to mediation, failing settlement in mediation, to binding arbitration in accordance with the rules of the American Arbitration Association. Arbitration shall be conducted in San Antonio, Texas. Each party will select one person to serve as arbitrator. Those arbitrators will in turn select a single arbitrator to hear the matter.  Each party is responsible for its

---

[2]<u>See</u> <u>id.</u> at 2 ¶ 8; 3 ¶ 15; 4 ¶ 18.

[3]<u>See</u> <u>id.</u> at 3 ¶ 15.   "[Langston] and the Putative Class Members received pay checks and W-2s from [eEmployers], even though they performed services for Premier."  <u>Id.</u> at 4 ¶ 17.

[4]<u>See</u> <u>id.</u> at 1-2 ¶ 4; 3 ¶¶ 13-15.

[5]<u>Id.</u> at 4-5 ¶ 22.

own costs and expenses and will share equally the cost and expenses of the Arbitrator.  The arbitration will be subject to and governed by the provisions of the Federal Arbitration Act, 9 U.S.C., Sections 1-et seq.  The parties hereto stipulate and agree that this agreement involves matters affecting interstate commerce.[6]

Langston filed his Complaint on April 6, 2015, seeking overtime wages under the FLSA, liquidated damages, attorney's fees, and costs on behalf of himself and a putative class of MWD employees.[7]  Premier answered on May 8, 2015, and eEmployers answered on June 1, 2015.[8]  Premier moved to compel arbitration on July 2, 2015, and Langston did not oppose the motion.[9]  The court entered an order compelling arbitration on July 14, 2015.[10]  The

---

[6]See Declaration of Bonnie Selby ("Selby Declaration"), Exhibit A to Motion for Clause Construction, Docket Entry No. 35-1; Employment Agreement, Exhibit A to Selby Declaration, Exhibit A to Motion for Clause Construction, Docket Entry No. 35-1, p. 4.

[7]Complaint, Docket Entry No. 1, p. 2 ¶ 5; pp. 5-7 ¶¶ 23-29.

[8]See Premier Directional Drilling, L.P.'s Answer and Affirmative Defenses to Plaintiff's Collective Action Complaint, Docket Entry No. 11; Defendant, eEmployers Solutions, Inc.'s, Original Answer and Affirmative Defenses to Plaintiff's Collective Action Complaint, Docket Entry No. 16.

[9]See Defendant Premier Directional Drilling, L.P.'s Amended Motion to Compel Arbitration and to Stay the Trial of the Action Until Arbitration Has Been Had ("Premier's Amended Motion to Compel"), Docket Entry No. 22; Plaintiff's Notice of No Opposition to Defendant Premier Directional Drilling, L.P.'s Amended Motion to Compel Arbitration and to Stay the Trial of the Action Until Arbitration Has Been Had, Docket Entry No. 25.

[10]See Order of July 14, 2015, Docket Entry No. 26 (granting Premier's Amended Motion to Compel, Docket Entry No. 22, and denying without prejudice Plaintiff Douglas Langston's Motion for Conditional Certification and for Notice to Putative Class Members, Docket Entry No. 18).

Employment Agreement required mediation, which failed, and the parties' arbitrator selectors have selected a final arbitrator to hear this matter.[11]

Premier filed the pending motion on April 22, 2016, seeking an order compelling Langston to individual arbitration with Premier and eEmployers.[12]  The Motion to Compel urges the court to answer two questions:  (1) who decides whether arbitration may proceed on an individual or collective basis, the court or the arbitrator? and (2) did the parties agree to class or collective arbitration?[13]

Premier argues that the court, not the arbitrator, should act as decision-maker in determining whether the parties agreed to arbitrate on an individual or collective basis.[14]  Premier also argues that the arbitration agreement does not permit arbitration of collective actions and asks the court to dismiss Langston's Collective Action Complaint.[15]  Langston responds that because the Employment Agreement includes broad coverage language and expressly incorporates the American Arbitration Association's (the "AAA") Rules, the parties agreed to allow the arbitrator to act as

---

[11]See Joint Status Report filed Oct. 9, 2015, Docket Entry No. 27; Joint Status Report filed Dec. 9, 2015, Docket Entry No. 28; Joint Status Report filed June 7, 2016, Docket Entry No. 42.

[12]See Motion for Clause Construction, Docket Entry No. 35, p. 8.

[13]See id. at 9-10.

[14]See id. at 10-20.

[15]See id. at 20-32.

decision-maker in answering whether the parties agreed to submit to collective arbitration.[16]

## II. Discussion

### A. Questions of Arbitrability Versus Procedural Questions

Premier argues that whether arbitration may proceed as a collective action is a question of arbitrability presumptively reserved for the court.[17] Arbitration is a matter of contract, and arbitration agreements are enforced according to their terms. See Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772, 1776 (2010); AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011); AT&T Technologies, Inc. v. Communications Workers of America, 106 S. Ct. 1415, 1418 (1986). "Preliminary issues in arbitration cases include gateway disputes, which typically require judicial determination, and procedural questions, which are to be reviewed by the arbitrator." Robinson v. J & K Administrative Management Services, Inc., 817 F.3d 193, 195 (5th Cir. 2016) (citing Green Tree Financial Corp. v. Bazzle, 123 S. Ct. 2402, 2406-08 (2003) (plurality opinion)). "The arbitrability of disputes—in other words, the determination of whether the agreement applies to the

---

[16]Langston's Response to Premier's Motion to Compel Individual Arbitration ("Langston's Response"), Docket Entry No. 40, p. 1. Langston does not respond to Premier's second argument regarding whether the Employment Agreement allows for collective arbitration.

[17]Motion for Clause Construction, Docket Entry No. 35, pp. 9, 10.

parties' claims—is generally a gateway issue to be determined by the courts." Id. (citing Communications Workers, 106 S. Ct. at 1418-19). The arbitrability determination is deferred to the arbitrator, however, when the agreement "espouses the parties intent to do so." Id. (citing Howsam v. Dean Witter Reynolds, Inc., 123 S. Ct. 588, 591-92 (2002)); see also Rent-A-Center, 130 S. Ct. at 2777 ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability' . . . ") (citations omitted); First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1924 (1995) (quotations omitted); Communication Workers, 106 S. Ct. at 1418 ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). "The same is true for the threshold question of whether class or collective arbitration is available under an arbitration agreement." Robinson, 817 F.3d at 195-96.

The Supreme Court has not decided if the question of whether the parties agreed to arbitrate on a collective basis is an arbitrability issue or procedural issue. See Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064, 2068 n.2 (2013); Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 130 S. Ct. 1758, 1772 (2010).[18]

---

[18]Under Stolt-Nielsen, 130 S. Ct. at 1775, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."

Other circuit courts have held, like the Fifth Circuit in Robinson, that it is an arbitrability question presumptively for the court. In Dell Webb Communities, Inc. v. Carlson, 817 F.3d 867, 875 (4th Cir. 2016), the Fourth Circuit noted that "[t]he evolution of the [Supreme] Court's cases are but a short step away from the conclusion that whether an arbitration agreement authorizes class arbitration presents a question as to the arbitrator's inherent power, which requires judicial review." Thus, it was "not surprising . . . that those circuit courts to have considered the question have concluded that, 'unless the parties clearly and unmistakably provide otherwise,' whether an arbitration agreement permits class arbitration is a question of arbitrability for the court." Id. at 876 (citations omitted); see also Reed Elsevier, Inc. v. Crockett, 734 F.3d 594, 599 (6th Cir. 2013) ("[T]he question whether an arbitration agreement permits classwide arbitration is a gateway matter . . . reserved for 'judicial determination unless the parties clearly and unmistakably provide otherwise.'"); Opalinski v. Robert Half International Inc., 761 F.3d 326, 335-36 (3d Cir. 2014) ("[T]he availability of class arbitration is a 'question of arbitrability' for a court to decide unless the parties unmistakably provide otherwise."). The court must therefore examine the parties' agreement to determine whether they agreed to submit the collective arbitrability issue to the arbitrator. If not, it will be decided by the court.

-7-

**B.    Whether the Parties Agreed to Submit the Collective Arbitration Question to the Arbitrator**

Premier argues that Langston cannot meet his burden of presenting "clear and unmistakable" evidence that the parties intended to submit this question to the arbitrator and that the Employment Agreement is silent on the issue, leaving the question for the court.[19]  Langston responds that the Employment Agreement contains broad coverage language that expressly gives questions of "contract" to the arbitrator and does not remove any type of claim from arbitration, compelling deferral of the collective arbitrability question to the arbitrator.[20]

**1.    The "Broad Language" of the Arbitration Agreement**

Langston relies on Robinson, 817 F.3d 196, and Gonzales v. Brand Energy & Infrastructure Services, Inc., Civ. Action No. H-12-1718, 2013 WL 1188136 (S.D. Tex. March 20, 2013), arguing that the broad coverage language of the Employment Agreement compels the deferral of class arbitrability to an arbitrator.[21]  In Robinson, 817 F.3d at 194, the Fifth Circuit held that the district court properly applied Pedcor Management Co., Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc., 343 F.3d 355, 359 (5th Cir. 2003).  The Robinson court clarified that Pedcor Management did not

---

[19]See Motion for Clause Construction, Docket Entry No. 35, pp. 9, 13.

[20]See Langston's Response, Docket Entry No. 40, pp. 1-3.

[21]See id. at 2-3.

-8-

hold that availability of class arbitration is always a decision for the arbitrator.  <u>Robinson</u>, 817 F.3d at 196.  Rather, <u>Pedcor Management</u> "held that when an arbitration agreement at issue includes broad coverage language, such as a contract clause submitting 'all disputes, claims, or controversies arising from or relating to' the agreement to arbitration, then the availability of class or collective arbitration is an issue arising out of the agreement that should be determined by the arbitrator."[22]  <u>Id.</u> (citing <u>Pedcor Management</u>, 343 F.3d at 359).  Thus, "if parties agree to submit the issue of arbitrability to the arbitrator, then the availability of class or collective arbitration is a question for the arbitrator instead of the court."  <u>Id.</u> at 197.

The agreement in <u>Robinson</u> submitted to arbitration "'claims challenging the validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of the Agreement to a particular dispute or claim.'"  <u>Id.</u>  The defendant argued that because the agreement was silent as to class arbitration, it could

---

[22]The <u>Robinson</u> defendant argued that <u>Stolt-Nielsen</u>, 130 S. Ct. 1758, abrogated <u>Pedcor Management</u>.  <u>Robinson</u>, 817 F.3d at 195-96. <u>Pedcor Management</u>, 817 F.3d 355, relied on the Supreme Court's reasoning in <u>Bazzle</u>, 123 S. Ct. 2402, but <u>Stolt-Nielsen</u>, 130 S. Ct. at 1771-72, clarified that <u>Bazzle</u> did not yield a majority decision.  However, <u>Stolt-Nielsen</u> "also refused to speak to [the 'who decides'] issue."  <u>Robinson</u>, 817 F.3d at 196 (citing <u>Stolt-Nielsen</u>, 130 S. Ct. at 1772).  Thus, the <u>Robinson</u> court concluded that "<u>Stolt-Nielsen</u>'s refusal to decide this issue is not sufficient to set aside <u>Pedcor Management</u>," and "<u>Stolt-Nielsen</u> does not overrule prior Supreme Court and Fifth Circuit decisions requiring questions of arbitrability, including the availability of class mechanisms, to be deferred to arbitration by agreement."  <u>Id.</u> at 197.

not be read to defer the issue to the arbitrator.[23]  <u>Id.</u>  The court compared the language to that in other cases:

> Contract language similar to section (g) has been found to authorize deferral of arbitrability issues.  In [<u>Bazzle</u>], the plurality held that language submitting "[a]ll disputes, claims or controversies arising from or relating to this contract" to arbitration was sufficient for deferral.  Similarly, in <u>Pedcor Management</u>, this court concluded that a clause submitting "any dispute . . . in connection with the [a]greement" included determinations of class or collective arbitration.  And, in [<u>Rent-A-Center</u>], an agreement granting exclusive authority to an arbitrator "to resolve any dispute relating to the interpretation, applicability, enforce-ability or formation of [the] [a]greement," was determined to be an unambiguous and proper delegation of authority under the Federal Arbitration Act.

<u>Id.</u> at 198 (citations omitted).  The <u>Robinson</u> court held that the agreement, which required "that 'claims challenging the validity or enforceability of' the agreement must be arbitrated" was "unambiguous evidence of the parties intention to submit arbitrability disputes to arbitration and that arbitration was properly compelled."[24]  <u>Id.</u>

---

[23]The defendant also argued that the "agreement applies only between the company and Robinson and may not be read to include arbitration of . . . [the] non-party claims."  <u>Robinson</u>, 817 F.3d at 197-98.  The court held that this argument was "a misguided attempt to bootstrap a preliminary proceeding into judicial review of an arbitration award that does not yet exist.  [The defendant] may be right that the agreement does not allow class or collective arbitration, but that is not the issue before the court.  The issue is who decides if the arbitration agreement permits class or collective procedures."  <u>Id.</u>

[24]<u>See</u> <u>also</u> <u>Planet Beach Franchising Corp. v. Zaroff</u>, 969 F. Supp. 2d 658, 659, 668 (E.D. La. Aug. 27, 2013) (finding that an agreement to submit "[a]ll disputes and claims relating to this Agreement or any other agreement entered into between the parties, the rights and obligations of the parties, or any other claims or
(continued...)

Premier argues that Langston's Employment Agreement is distinguishable because the arbitration provisions in Robinson, Bazzle, Rent-A-Center, and Pedcor Management were general assignments of all arbitrability issues to the arbitrator and contained language specifically committing issues relating to the construction of the arbitration agreement itself to the arbitrator.[25] In contrast, Premier argues, Langston's Employment Agreement "assigns only the substance of the parties' claims to the arbitrator, without any reference to the interpretation or enforceability of the arbitration agreement itself," which is not sufficient to reassign arbitrability questions from the court to the arbitrator.[26] Premier argues that only agreeing to arbitrate issues "connected with" or "related to" the arbitration agreement itself constitutes a deferral of arbitrability issues to the arbitrator.[27] Thus, Premier argues, the critical element that was present in those cases is missing here.

---

[24](...continued)
causes of action relating to the making, interpretation, or performance of either party under this Agreement, shall be settled by arbitration . . . ." constituted an agreement to submit the collective arbitration issue to the arbitrator).

[25]See Motion for Clause Construction, Docket Entry No. 35, p. 15; Reply in Support of Premier Directional Drilling, L.P.'s Motion for Clause Construction and to Compel Bilateral Arbitration Consistent With Plaintiff's Arbitration Agreement ("Reply in Support"), Docket Entry No. 41, pp. 7-8.

[26]See Motion for Clause Construction, Docket Entry No. 35, p. 15; Reply in Support, Docket Entry No. 41, p. 8.

[27]See Motion for Clause Construction, Docket Entry No. 35, p. 15.

In a case with similar arbitration language that also raised class-wide and collective claims for unpaid overtime, the court denied the employer's "Petition to Dismiss or in the Alternative Stay the Pending Arbitration and Compel Individual Arbitration in Accordance With the Binding Arbitration Agreements." Wells Fargo Advisors, L.L.C. v. Tucker, Civ. Action No. 15-CV-7722 VEC, 2016 WL 3670577, at *1 (S.D.N.Y. July 1, 2016). The arbitration clause stated:

> you agree that any controversy or dispute, including but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotional distress, tortious interference with business or contract, federal, state or local statute or ordinance and/or other theory, arising between you and Wells Fargo Advisors, shall be submitted for arbitration . . . .[28]

The court discussed Bazzle, Stolt-Nielsen, Concepcion, and Oxford Health Plans, and acknowledged that "[i]n the wake of Stolt-Nielsen, [Concepcion], and Oxford, the Third, Fourth and Sixth Circuits and at least one district court in this Circuit have held that class arbitration is a gateway issue that the court must decide." Id. at *3-4 (citing Dell Webb, 817 F.3d at 877; Opalinski, 761 F.3d at 332; Huffman v. Hilltop Companies, LLC, 747 F.3d 391, 398-99 (6th Cir. 2014); Anwar v. Fairfield Greenwich Ltd., 950 F. Supp. 2d 633, 636 (S.D.N.Y. 2013)). It also noted

---

[28]The agreement provided for arbitration before the Financial Industry Regulatory Authority ["FINRA"] with any nonaccepted controversy, dispute, or claim to be submitted to the AAA pursuant to its Securities Arbitration Rules. Wells Fargo Advisors, 2016 WL 3670577, at *1.

that the Fifth Circuit reaffirmed the Pedcor Management holding that a broad arbitration clause submitting "any dispute" to arbitration constitutes an unambiguous deferral of class arbitration determinations to the arbitrator. Id. (citing Robinson, 817 F.3d at 197). Thus, the Wells Fargo Advisors court held that "[i]n the absence of Supreme Court precedent expressly disavowing Bazzle and in keeping with Second Circuit precedent regarding the arbitrator's role in interpreting the language of a broad arbitration clause and the persuasive decisions of several sister district courts, the Court finds that the availability of class arbitration under the arbitration provisions at issue should be decided by the arbitrator, not by the Court."[29] Id. at *4.

In another case (cited by Wells Fargo Advisors), Edwards v. Macy's Inc., 2015 WL 4104718, at *2, the court examined this arbitration clause:

> Any dispute, controversy, benefits requests, demands, losses, damages, actions or causes of action . . . arising out of or relating in any way to this Amendment, or to the solicitation for and/or sale of this Amendment, shall be settled by arbitration under the provision of the Federal Arbitration Act, 9 U.S.C., Section 1, et seq. Such arbitration shall be governed by the rules of the

---

[29]The court found persuasive cases holding that the issue is a procedural one for the arbitrator. See Wells Fargo Advisors, 2016 WL 3670577, at *4-5 (citing In re A2P SMS Antitrust Litigation, Civ. Action No. 12-CV-2656(AJN), 2014 WL 2445756, at *1 (S.D.N.Y. May 29, 2014) and Edwards v. Macy's Inc., Civ. Action No. 14CV-8616-CM-JLC, 2015 WL 4104718, at *11-12 (S.D.N.Y. June 30, 2015). Other courts have found the same, even after Stolt-Nielsen. See, e.g., Guida v. Home Savings of America, Inc., 793 F. Supp. 2d 611, 614-19 (E.D.N.Y. 2011) (issue is procedural and for the arbitrator to decide).

> American Arbitration Association . . . If we, a
> claimant, or a third party have any dispute that is
> directly or indirectly related to a dispute governed by
> this arbitration provision, the claimant and we agree to
> consolidate all such disputes.

The court laid out the "long-standing rules," unaltered by Stolt-Nielsen, that "[i]f the agreement is broad—that is, if it calls for arbitration of 'any and all disputes'—there arises a presumption of arbitrability; and if the claim 'implicates issues of contract construction or the parties' rights and obligations under it,' the issue of contract construction is perforce arbitrable." Id. at *10-11 (citing Collins & Aikman Prods. Co. v. Building Systems, Inc., 58 F.3d 16, 23 (2d Cir. 1995)). The court held that

> Applying the rules summarized above, it is clear that the
> issue of whether the language quoted above authorizes
> class-wide arbitration is for the arbitrators in the
> first instance, not for the court. The arbitration
> clause in the Terms and Conditions is a broad "any and
> all" clause—so broad that by its literal terms it extends
> beyond disputes between the parties to include related
> disputed involving third parties! Whether that language
> encompasses claims asserted on behalf of a class is an
> issue of contract construction.

Id. at *11. The court's conclusion was "reinforced by the fact that the arbitration agreement . . . provide[d] that any arbitration held thereunder will be conducted in accordance with the Rules of the [AAA],' which anticipate that the arbitrators "shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." Id.; see also Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Insurance Co., 671 F.3d

635, 636–39 (7th Cir. 2011) (indicating that issues like the appropriateness of consolidated or class arbitration are procedural ones for the arbitrator).

This authority aligns with the authority in this jurisdiction and supports the conclusion that the arbitrator should decide whether Langston and Premier agreed to collective arbitration. Langston and Premier agreed broadly to submit "any controversy arising between [them]" to binding arbitration. This is similar to the language in Pedcor Management, 343 F.3d at 359: "any dispute in connection with the agreement." "Any controversy arising between any parties" is arguably broader, and neither provision specifically mentions construing the agreement. Langston and Premier also specifically agreed to arbitrate claims "including but not limited to common law, statutory, tort or contract claims."[30] While Langston's Employment Agreement does not single out claims involving "this contract," the parties agreed to arbitrate contract claims. The law in this circuit is that "when an agreement includes broad coverage language, such as a contract clause submitting 'all disputes, claims, or controversies arising from or relating to' the agreement to arbitration, then the availability of class or collective arbitration is an issue arising out of the agreement that should be determined by the arbitrator." See Robinson, 817 F.3d at 196 (citing Pedcor Management, 343 F.3d at

---

[30]See Employment Agreement, Exhibit A to Selby Declaration, Exhibit A to Motion for Clause Construction, Docket Entry No. 35-1, p. 4.

359) (emphasis in original); see also Gonzales, 2013 WL 1188136, at
*5.  Because the parties here agreed to submit "any controversy"
arising between them to arbitration, the court concludes that the
parties agreed to have the arbitrator decide the issue of whether
the Employment Agreement permits collective arbitration or not.

    2.   The AAA Rules and AAA Supplementary Rules

    The court's conclusion that the arbitrator must decide this
issue is supported by additional language in the Employment
Agreement.   Langston argues that the Employment Agreement
explicitly provides for "binding arbitration in accordance with the
rules of the [AAA]," which include the rules governing the specific
type of action and the AAA supplementary rules.[31]  Langston also
argues that even in the absence of an explicit adoption of AAA
rules, the parties have consented to AAA's rules simply by
consenting to AAA arbitration.[32]  Premier argues that "[t]here is
no controlling authority in the Fifth Circuit that resolves the
issue of whether an arbitration agreement, like the one at issue
here, which merely refers to the 'rules' of the AAA, provides the
kind of 'clear and unmistakable' evidence required to take the
arbitrability decision away from this Court."[33]  Premier relies on

---

[31]See Langston's Response, Docket Entry No. 40, p. 4.

[32]See id.

[33]See Motion for Clause Construction, Docket Entry No. 35,
p. 16.

recent decisions from the Third, Fourth, Sixth, and Ninth Circuits.[34]

The AAA's arbitration rules include rules governing the specific action and separate Supplementary Rules for Class Arbitrations (the "Supplementary Rules"), which were enacted after the Supreme Court decided <u>Bazzle</u>.  <u>See</u> <u>Reed v. Florida Metropolitan University</u>, 681 F.3d 630, 634–35 (5th Cir. 2012), <u>abrogated on other grounds</u>, <u>Oxford Health Plans</u>, 133 S. Ct. 2064.  Langston argues that by consenting to AAA arbitration, the parties have also consented to the AAA's rules.[35]  The AAA's Employment Arbitration Rules explain:

---

[34]<u>See</u> <u>id.</u> at 10.  Premier also notes that "a number of district courts have held that reference to the AAA rules is not a sufficiently 'clear and unmistakable' indication that the parties intended to refer the question of class arbitration to the arbitrator."  <u>Id.</u> at 18 n.9 (citing <u>Thomas v. Right Choice Staffing Group, LLC</u>, Civ. Action No. 15-10055, 2015 WL 4078173, at *7 (E.D. Mich. July 6, 2015); <u>Shakoor v. VXI Global Solutions</u>, 35 N.E.3d 539, 547 (Ohio App. 7 Dist. June 16, 2015); <u>Chesapeake Appalachia, LLC v. Suppa</u>, 91 F. Supp. 3d 853, 863-64 (N.D. W. Va. 2015); <u>Torres v. CleanNet, U.S.A., Inc.</u>, 90 F. Supp. 3d 369, 373, 381 (E.D. Pa. 2015); <u>Bachrach v. Cornwell Quality Tools Co.</u>, Civ. Action No. 27113, 2014 WL 7454687, *3 (Ohio App. 9 Dist. Dec. 31, 2014); <u>Chesapeake Appalachia, L.L.C. v. Scout Petroleum, LLC</u>, 73 F. Supp. 3d 488, 500-01 (M.D. Pa. 2014); <u>Chico v. Hilton Worldwide, Inc.</u>, Civ. Act. No. 14-cv-05750, 2014 WL 5088240, at *11 (C.D. Cal. Oct. 7, 2014); <u>Tompkins v. 23andMe, Inc.</u>, Civ. Act. Nos. 5:13-CV-05682, 5:14-CV-00294, 5:14-CV-00429, 5:14-CV-01167, 5:14-CV-01191, 5:14-CV-01258, 5:14-CV-01348, 5:14-CV-01455, 2014 WL 2903752, at *12 (N.D. Cal. June 25, 2014); <u>Lopez v. Ace Cash Express, Inc.</u>, Civ. Act. Nos. LA CV11-04611 JAK (JCx), LA CV11-07116 JAK (JCx), 2012 WL 1655720, at *8 (C.D. Cal. May 4, 2012); <u>Moody v. Metal Supermarket Franchising America Inc.</u>, Civ. Act. No. 13-cv-5098 PJH, 2014 WL 988811, at *3 (N.D. Cal. Mar. 10, 2014); <u>Chassen v. Fidelity National Financial, Inc.</u>, Civ. Act. No. 09-cv-00291, 2014 WL 202763, at *6 (D.N.J. Jan. 17, 2014).  In some of these cases the agreements do not mention the AAA Rules, and some do not include the language of the agreements.

[35]<u>See</u> Langston's Response, Docket Entry No. 40, p. 4.

> The parties shall be deemed to have made these rules a
> part of their arbitration agreement whenever they have
> provided for arbitration by the American Arbitration
> Association (hereinafter "AAA") or under its Employment
> Arbitration Rules and Mediation Procedures or for
> arbitration by the AAA of an employment dispute without
> specifying particular rules.  If a party establishes that
> an adverse material inconsistency exists between the
> arbitration agreement and these rules, the arbitrator
> shall apply these rules.

AAA Employment Arbitration Rules and Mediation Procedures, R. 1

(Eff. Nov. 1, 2009).[36]   Thus, the AAA rules apply even if the

parties have not specified particular rules, and the Supplementary

Rules apply to any dispute governed by "any of the rules" of the

AAA:

> These Supplementary Rules for Class Arbitrations
> ("Supplementary Rules") shall apply to any dispute
> arising out of an agreement that provides for arbitration
> pursuant to any of the rules of the [AAA] where a party
> submits a dispute to arbitration on behalf of or against
> a class or purported class, and shall supplement any
> other applicable AAA rules.  These Supplementary Rules
> shall also apply whenever a court refers a matter pleaded
> as a class action to the AAA for administration, or when
> a party to a pending AAA arbitration asserts new claims
> on behalf of or against a class or purported class.

Suppl. R. 1(a) (Eff. Oct. 8, 2003);[37] see also Gonzales, 2013

WL 1188136, at *5 n.22.  Supplementary Rule 3 provides (in part):

> Upon appointment, the arbitrator shall determine as a
> threshold matter, in a reasoned, partial final award on
> the construction of the arbitration clause, whether the
> applicable arbitration clause permits the arbitration to

---

[36]Available at: https://www.adr.org/aaa/ShowPDF?doc=ADRSTG
_004366.

[37]Available at: https://www.adr.org/aaa/ShowPDF?doc=ADRSTG_00
4129.

proceed on behalf of or against a class (the "Clause Construction Award").[38]

In <u>Reed</u>, 681 F.3d at 636, the Fifth Circuit held that the district court correctly referred the class arbitration issue to the arbitrator.  The court did not resolve the question of whether class arbitration constitutes an arbitrability question for the court because "the parties here consented to the Supplementary Rules, and therefore agreed to submit the class arbitration issue to the arbitrator, [so] we need not and do not revisit this issue." <u>Id.</u> at 634 n.3; <u>see also</u> <u>id.</u> at n.7 ("Nor would the arbitrability determination necessarily be conclusive, as parties may agree to submit arbitrability questions to an arbitrator.") (citing <u>Rent-A-Center</u>, 130 S. Ct. at 2777)).

The parties' agreement stated:

> The student agrees that any dispute arising from my enrollment at Everest University, no matter how described, pleaded or styled, shall be resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association ("AAA") under its Commercial Rules.  The award rendered by the arbitrator may be enforced in any court having jurisdiction.
>
> . . .
>
> **Acknowledgment of Waiver of Jury Trial and Availability of AAA Rules**
>
> By my signature on the reverse, I acknowledge that I understand that both I and Everest University are irrevocably waiving rights to a trial by jury, and are selecting instead to submit any and all claims to the

---

[38]<u>See</u> note 37 <u>supra</u>.

> decision of an arbitrator instead of a court. I
> understand that the award of the arbitrator will be
> binding, and not merely advisory.

Id. at 632-33. The court reasoned that the parties' consent to the AAA Commercial Rules constituted consent to the Supplementary Rules. Id. at 634-35. It noted that: "[c]ommentators and AAA arbitral tribunals have consistently concluded that consent to any of the AAA's substantive rules also constitutes consent to the Supplementary Rules." Id. at 635.[39]

Premier argues that "Reed is the opposite of this case because Langston and Premier have not agreed to the application of the AAA's Supplementary Rules. Langston's Employment Agreement provides only generically that the 'rules' of the AAA will apply; it makes no reference whatsoever to the Supplementary Rules. Unlike the defendant in Reed, Premier has not argued in any pleading for the application of the Supplementary Rules."[40]

There are differences between Reed and this case. The Reed parties never specifically disputed the applicability of the Supplementary Rules, where Premier does.[41] See Reed, 681 F.3d at

---

[39]Reed, 681 F.3d at 635 n.4, noted that one arbitral tribunal decided that the parties consented to the Supplementary Rules by agreeing that they would be governed by "the Rules of the [AAA]," even though their arbitration agreement was executed five years prior to the enactment of the Supplementary Rules (citing Presidents and Fellows of Harvard College v. JSC Surgutneftegaz, 770 PLI/Lit. 127, 135 n.5 (2008)).

[40]See Motion for Clause Construction, Docket Entry No. 35, p. 14.

[41]See id.

635 n.5.  The Reed defendant also cited Supplementary Rule 3 in a motion to vacate the clause construction award and argued that "'[t]he AAA rules *to which these parties agreed* provide that a clause construction award would be subject to a motion to vacate,'" while Premier has not relied on the Supplementary Rules in any pleading.  Id.  Langston's Employment Agreement refers to the "rules of the [AAA]" while the Reed agreement specifically referenced the AAA's Commercial Rules.  See id. at 632.  However, the Reed parties' agreement did not reference the Supplementary Rules, and the parties did not stipulate that the Supplementary Rules would apply.  The broadly stated rule in Reed and the AAA Rules themselves lead the court to conclude that consent to any of the substantive rules also constitutes consent to the Supplementary Rules.

Langston also relies on Gonzales, 2013 WL 1188136, *1.  The Gonzales agreement provided "Any employment and/or personal injury claim arising out of or relating to Brand and employees at-will employment or other disputes covered in this Program . . . **shall be governed by the Federal Arbitration Act (FAA)** and resolved by final, binding arbitration administered by the [AAA] under its current Employment Rules . . . ."  Id. at *1.[42]  The AAA Employment

---

[42]The Dispute Resolution Program Acknowledgment stated, "I will submit to and seek to resolve any disputes arising out of or relating to my application or candidacy for employment, employment and/or cessation of employment through the Brand Dispute Resolution Program."  Gonzales, 2013 WL 1188136, at *2.

Rules cross-reference the Supplementary Rules, but the agreement
did not mention the Supplementary Rules. See id.[43] The court held:

> Through language similar to that used in Bazzle, the
> parties agreed to submit to arbitration "any disputes
> arising out of or relating to [Gonzales'] application or
> candidacy for employment, employment and/or cessation of
> employment." The court therefore concludes that the
> parties agreed to submit the collective and class
> arbitration questions to the arbitrator because those
> questions constitute disputes that have arisen out of
> Gonzales' employment.
>
> Reed compels the same result. The parties in this case
> agreed to "binding arbitration administered by the [AAA]
> under its current Employment Rules." Under Reed the
> parties therefore also agreed that the Supplementary
> Rules would apply. The court concludes that Reed and the
> Supplementary Rules, like Bazzle, apply with equal force
> to collective and class actions alike. Accordingly, the
> question of collective or class arbitration is for the
> arbitrator to decide.

Gonzales, 2013 WL 1188136, at *5.

Premier argues that Gonzales is also distinguishable.[44] It
points out that the arbitration agreement in Gonzales was longer
and more developed than Langston's Employment Agreement and
referenced the AAA's current Employment Rules, which cross-
reference the AAA's Supplementary Rules.[45] Premier points out that

---

[43]Gonzales was decided before Robinson clarified that Pedcor
Management did not hold that the arbitrator always decides whether
collective arbitration is appropriate. However, Gonzales, 2013
WL 1188136, at *4, acknowledged that Bazzle was only a plurality
and that the Supreme Court has never decided "who decides."

[44]See Motion for Clause Construction, Docket Entry No. 35,
p. 15; Reply in Support, Docket Entry No. 41, pp. 9-10.

[45]See Reply in Support, Docket Entry No. 41, pp. 9-10.

there are several versions of the AAA rules that do not cross-reference the Supplementary Rules.[46]  Other courts have recognized this distinction.  Premier cites a case that used language nearly identical to that in Langston's Employment Agreement.  In Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, 809 F.3d 746, 748 (3d Cir. 2016), the Third Circuit examined an arbitration provision in oil and gas leases that provided:  "In the event of a disagreement between Lessor and Lessee concerning this Lease, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined by arbitration in accordance with the rules of the [AAA]."  The court held "that the Leases do not 'clearly and unmistakably' delegate the question of class arbitrability to the arbitrators."  Id.; see id. at 763 ("The Commercial Rules do not even refer to the Supplementary Rules . . . ."); Dell Webb, 817 F.3d at 869, 877 (arbitration agreement stating "every controversy or claim arising out of or relating to this Agreement, or the breach thereof shall be settled by binding arbitration . . . .  The rules of the [AAA], published for construction industry arbitrations, shall govern the arbitration proceeding and the method of appointment of the arbitrator" did not "unmistakably provide that the arbitrator would decide whether their agreement authorize[d] class arbitration" so the district court erred in concluding that the question was a

---

[46]See id. at 10.

procedural one for the arbitrator); <u>Reed Elsevier</u>, 734 F.3d at 599 (agreement was "silent or ambiguous as to whether an arbitrator should determine the question of classwide arbitrability; and that is not enough to wrest that decision from the courts" despite a reference to the AAA rules); <u>Huffman</u>, 747 F.3d at 398-99.

The court is not persuaded, however, that failure to reference a particular subset of the AAA Rules removes the agreement from the rule in <u>Reed</u> and <u>Gonzales</u>. Under the AAA's Employment Arbitration Rules, the parties are deemed to have made the Employment Rules a part of their arbitration agreement whenever they have "provided for arbitration by the [AAA] . . . or for arbitration by the AAA of an employment dispute without specifying particular rules."[47] Langston's Employment Agreement does both. The Supplementary Rules apply to "any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the [AAA] where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules."[48] This language does not suggest that the parties must

---

[47]<u>See</u> note 36 <u>supra</u>.

[48]<u>See</u> note 37 <u>supra</u>. The court notes that, as in <u>Reed</u>, "[t]he parties' adoption of the AAA Commercial Rules and the Supplementary Rules cannot, however, be considered in deciding whether they agreed to arbitrate as a class." <u>Reed</u>, 681 F.3d at 636 n.6. <u>See</u> AAA Suppl. R. 3 ("In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.").

specify which rules apply in order to incorporate the Supplementary Rules. Nor does it state that the primary rules must cross-reference the Supplementary Rules in order for the Supplementary Rules to be effective. Instead, the Supplementary Rules "shall supplement any other applicable AAA rules." <u>Id.</u> Other courts have held that parties agree to delegate the issue of class arbitration to the arbitrator by incorporating the AAA Rules in their agreement. <u>See, e.g.</u>, <u>Guess?, Inc. v. Russell</u>, Civ. Action No. 2:16-cv-00780-CAS(ASx), 2016 WL 1620119, at *6 (C.D. Cal. April 18, 2016) ("[B]y incorporating the AAA's Model Rules for Arbitration of Employment Disputes, the parties in this case agreed to delegate the question of whether respondents could pursue their claims on a class-wide basis to an arbitrator."); <u>see also</u> <u>Gonzales</u>, 2013 WL 1188136, at *5 (applying <u>Reed</u>'s reasoning and reliance on the Supplementary Rules to a collective, rather than class, action).

### III.   <u>Conclusion</u>

While the Supreme Court has not decided "who decides" whether the parties agreed to collective or class arbitration, the rule in several circuits, including this one, appears to be that it is an arbitrability question for the court. However, a broad arbitration clause or agreement to submit to the AAA Rules may constitute an agreement by the parties to submit that question to the arbitrator. Langston's Employment Agreement includes both a broad arbitration

clause and an agreement to submit to the AAA Rules, which incorporate the Supplementary Rules. For these reasons, the court concludes that the parties agreed to have the arbitrator decide whether they agreed to collective arbitration. Therefore, Premier Directional Drilling, L.P.'s Motion for Clause Construction and to Compel Bilateral Arbitration Consistent With Plaintiff's Arbitration Agreement (Docket Entry No. 35) is **DENIED**.

**SIGNED** at Houston, Texas, on this 25th day of August, 2016.

SIM LAKE
UNITED STATES DISTRICT JUDGE